AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
6/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
06/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___IV___ DEPUTY

United States of America

v.

Geronimo Reyna,

Defendant(s)

Case No. 2:25-MJ-03698-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 9, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1071 | Concealing Person from Arrest |

This criminal complaint is based on these facts:

  Please see attached affidavit.

☒ Continued on the attached sheet.

/s/
Complainant's signature

Brittany Radke, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 17, 2025

/s/ Patricia Donahue
Judge's signature

City and state: Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
*Printed name and title*

AUSA: x7419

**AFFIDAVIT**

I, Brittany Radke, being duly sworn, declare and state as follows:

## I. **PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Geronimo Reyna ("GERONIMO") for violations of 18 U.S.C. § 1071 (Concealing person from arrest).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. **BACKGROUND OF AFFIANT**

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2019. Since July 2019, I have worked with the Crimes Against Children ("CAC")/Human Trafficking ("HT") unit. Since August 2024, I have been assigned to the Los Angeles Field Office where I have been assigned to the Long Beach Violent Crimes & Major Offenders squad. I have gained experience in violent crime matters by managing and/or participating in investigations and

receiving on-the-job training with more experienced and senior agents.

4. I have received training in the area of violent offences. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 111 and 1326, and I am authorized by law to request a search warrant.

5. Through my training and experience, I have become familiar with methods used by people who commit offenses involving assault on federal officers and destruction of government property. My training and experience have given me an understanding of how people who commit violent offenses use the internet and digital devices to facilitate, and commit, those offenses.

### III. SUMMARY OF PROBABLE CAUSE

6. On June 7, 2025, federal law enforcement officers made numerous arrests around 6400 Alondra Blvd., Paramount, CA 90723. Deputies of the United States Marshals Service ("USMS") were tasked with assisting in the transport of detainees. When they arrived at the location, they were met with protestors who attempted to impede their activities. When USMS was leaving the area, Elpidio Reyna ("REYNA"), the brother of the SUBJECT PERSON, began throwing projectiles, including rocks and improvised explosives, at USMS deputies in their vehicles. While the deputies were not hit, their vehicles were visibly damaged as a result, with dents in the body of the vehicles and broken windows.

7. On June 8, 2025, I received a criminal complaint and arrest warrant charging REYNA with violating 18 U.S.C. § 111. See 2:25-MJ-03510-DUTY. On June 9, 2025, the FBI released a wanted poster with REYNA's name and California Driver's License ("CDL") photograph, replacing the wanted poster from the day earlier which featured only images of REYNA from June 7, 2025.

8. On June 13, 2025, law enforcement executed a search warrant at GERONIMO's residence in Long Beach, CA, a location REYNA was suspected to be. Law enforcement did not locate REYNA, but they recovered a black iPhone belonging to GERONIMO. Law enforcement then obtained a warrant to search the device, and observed the following:

- Open tabs in the web browser which included the FBI Most wanted page, and a search for "maximum sentence for assault with," among others.

- On June 8, 2025, at 11:15 PM, the phone received a system notification from T-Mobile indicating the device was in Mexico.

- On June 9, 2025, two text messages from +52 662-423-7253 (the "7253 number") that asked to communicate via WhatsApp.

- On June 10, 2025, two missed calls from the 7253 number, one at 10:24 AM and one at 10:34 AM. The second call resulted in a voicemail from a male caller that I believe to be REYNA based on the substance of the call.

- In the Apple Maps application, there was a search for Tijuana and for "Central Camionera" in Tijuana for the week of June 8 through June 13.

9. Records from U.S. Customs and Border Protection ("CBP") showed a vehicle registered to GERONIMO cross the border

through the San Ysidro border crossing around on June 9, 2025 with two male occupants inside, with the individual in the passenger seat resembling REYNA.  Approximately an hour later, GERONIMO re-entered the United States in his vehicle at the San Ysidro border crossing with no occupant in the passenger seat.

### IV. STATEMENT OF PROBABLE CAUSE

10.  Unless otherwise indicated, I know the following based on my involvement in the investigation and conversations with other law enforcement agents:

**A.   PROTESTORS IMPEDE FEDERAL OFFICERS IN PARAMOUNT, CALIFORNIA BY THROWING PROJECTILES AT AGENTS' VEHICLES**

11.  Based on information provided to me by the United States Marshalls Service ("USMS"), I know that on June 7, 2025, USMS deputies were tasked with providing transportation assistance to a joint Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI") operation in the vicinity of 6400 Alondra Blvd., Paramount, CA.  According to written statements provided by USMS Deputy Kirby and USMS Deputy Cordova, I learned the following:

12.  A lead vehicle, transportation bus, and two follow vehicles were part of the convoy.  Deputy Kirby was driving the bus and Deputy Cordova was driving the lead vehicle.  Upon their arrival, they were met with twenty or more protestors as soon as they exited the freeway onto Alondra Blvd.  The situation escalated when individuals in the crowd began throwing projectiles, including rocks, improvised explosives, and

shopping carts.  As a result, there was damage to the vehicles, including broken windows and dents in the body of the vehicles.

13.  On June 7, 2025, I obtained and reviewed images provided by U.S. Border Protection Officer Gomez of a laceration to the hand of an officer who was an occupant of one of the government vehicles.  The laceration was caused by one of the rocks the protestors threw at the vehicle.

14.  Based on my conversation with Deputy Kirby, I know that the convoy was leaving the area sometime between 12:45 PM and 1:30 PM.

### B.   LAW ENFORCEMENT IDENTIFIES REYNA AND CHARGES HIM BY COMPLAINT

15.  On June 7, 2025, I reviewed videos and images from the TikTok account "sitevo1ution" and observed an individual wearing a black, red, and yellow Fox motorcycle helmet, black shirt, and light-colored pants, later identified as REYNA, throwing what appeared to be rocks or pieces of concrete at clearly marked U.S. Border Protection and other unmarked government vehicles.  REYNA appeared to be standing in the median of the street throwing multiple projectiles towards the driver side of several federal law enforcement vehicles as they passed.  It appeared that at least some of the projectiles REYNA threw were aimed directly at the federal officers driving those law enforcement vehicles.

16.  On June 8, 2025, the FBI released a wanted poster with images of REYNA from June 7, 2025.  After other agents and I were able to identify the individual as REYNA, on June 8, 2025,

I received a criminal complaint and arrest warrant charging REYNA with violating 18 U.S.C. § 111.  See 2:25-MJ-03510-DUTY. On June 9, 2025, the FBI released a wanted poster with images of REYNA along with his name and offered an award of $50,000 for information leading to his arrest and conviction.

### C. GERONIMO'S Device Shows His Efforts to Aid REYNA in Avoiding Arrest

17. On June 13, 2025, law enforcement executed a search warrant at the GERONIMO's residence at 5533 Long Beach Blvd., Space 56, Long Beach, CA, a location REYNA was suspected to be as it was the address of record of his mother and GERONIMO, and because law enforcement saw a dirt bike that looked like REYNA's dirt bike parked outside.  Law enforcement did not locate REYNA, but his brother GERONIMO was present.  Law enforcement interviewed GERONIMO, who told agents (in substance and summary) that he had not spoken to REYNA recently, nor did he have any idea where he was.

18. Pursuant to the search warrant, law enforcement recovered a black iPhone belonging to GERONIMO.  Law enforcement believed the device belonged to GERONIMO because it was seized from GERONIMO's residence, the name of the device in the iPhone's settings was "Geo's phone," and GERONIMO told law enforcement that it was his during questioning.

19. Law enforcement then obtained a warrant to search the device, and observed the following:

- The open tabs in the web browser included: the FBI Most wanted page, a search for "maximum sentence for assault

with," a search for "federal maximum security," and another FBI webpage.

- On June 8, 2025, at 11:15 PM, the phone received a system notification from T-Mobile saying "Welcome to Mexico! Your plan includes coverage that gives you 15GB/mo. Of high-speed data, plus unlimited calls and texts to and from the US, Mexico, and Canada at no extra cost. Enjoy your stay!"

- On June 9, 2025, two text messages from the 7253 number that said "Let's chat on WhatsApp! It's a fast, simple, and secure app we can use to message and call each other for free. Get it at https:/whatsapp.com/dl/code+lTEWcXJqV4?mode=tac."[1]

- On June 10, 2025, two missed calls from the 7253 number, one at 10:24 AM and one at 10:34 AM. The second call resulted in a voicemail from a male caller that said "Hey what's up bro? I need you to do me a [unintelligible] or Carmen or go to the house and call me back to this number or I'm 'on try to call you in the afternoon. Por favor if you can dog. [UI] my guy here [UI]. Let me know something I gotta tell him [UI]."

- In the Apple Maps application, for the week of June 8 through June 13, there was a search for Tijuana and for "Central Camionera" in Tijuana.

20. On June 13, 2025, I reviewed records from CBP which showed a vehicle registered to GERONIMO cross through the San Ysidro border crossing around 2:05 AM on June 9, 2025. An image from CBP of the vehicle during the crossing shows two male occupants. Based on comparison to his CDL photograph, I believe the male in the passenger seat resembles REYNA. On June 9, 2025, around 3:04 AM, GERONIMO re-entered the U.S. in his vehicle through the San Ysidro border crossing, as confirmed by

---

[1] The WhatsApp application was not downloaded onto the phone.

both an image from CBP and the CDL that he provided to CBP at the border. At the time he re-entered the U.S., there was no occupant in the passenger seat, or anywhere else in his vehicle.

### V. CONCLUSION

21. For the reasons described above, there is probable cause to believe that GERONIMO has committed a violation of 18 U.S.C. § 1071 (Concealing person from arrest).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 17th day of
June, 2025.

*Patricia Donahue*
_____
HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE